# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. 23-cr-00070-JB** |
| | * | |
| **CRAIG D. PERCIAVALLE** | * | |
| **JOSEPH A. RUNKEL** | * | |
| **WILLIAM O. ADAMS** | * | |

## UNITED STATES' RESPONSE IN OPPOSITION
## TO DEFENDANTS' SECOND MOTION TO DISMISS THE INDICTMENT

## TABLE OF CONTENTS

I.   BACKGROUND ...........................................................................................................1

II.  LEGAL STANDARD ..................................................................................................2

III. DISCUSSION ..............................................................................................................2

    A.  The Indictment is Timely .....................................................................................3

    B.  The Defendants Misconstrue 18 U.S.C. § 3293(2) —Counts 1, 7, and
       8  Have a 10-Year Statute of Limitations..............................................................7

          1.  The plain language of § 3293(2) clearly *does not* require that a
              financial institution was defrauded .....................................................8

          2.  The statutory scheme demonstrates that "affects a financial
              institution" means that the defendants' scheme exposed a
              financial institution to *an increased risk of loss*—not that it was
              the object of the fraud scheme .........................................................12

          3.  The legislative history of Section 3293(2) also supports the long-held
              view across federal circuits that Congress did not intend to limit
              the statute to situations where a financial institution was defrauded..............14

    C.  ████████████████████████████ ...............................................................15

          1.  █████████████████████████████████
              ████████ ..........................................................................16

          2.  █████████████████████████ .......................18

IV. CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**:

*Bruesewitz v. Wyeth LLC*,
  562 U.S. 223 (2011).................................................................................. 14

*DeGeorge v. U.S. Dist. Court for Cent. Dist. of Calif.*,
  219 F.3d 930 (9th Cir. 2000) .................................................................... 19

*In re: Walter Energy, Inc.*,
  911 F.3d 1121 (11th Cir. 2018) .................................................................. 8

*Kelly v. United States*,
  590 U.S. 391 (2020)................................................................................... 12

*Penn. Dept. of Corr. v. Yeskey*,
  524 U.S. 206 (1998)............................................................................... 9, 13

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997)............................................................................... 8, 12

*Spencer v. Specialty Foundry Products Inc.*,
  953 F.3d 735 (11th Cir. 2020) ................................................................... 8

*United States v. Agne*,
  214 F.3d 47 (1st Cir. 2000)....................................................................... 11

*United States v. Bank of New York Mellon*,
  941 F. Supp. 2d 438 (S.D.N.Y. 2013)................................................. 14, 15

*United States v. Belayneh*,
  672 F. Supp. 3d 1317 (N.D. Ga. 2023) ................................................. 6, 18

*United States v. Bischel*,
  61 F.3d 1429 (9th Cir. 1995) ................................................................. 6, 16

*United States v. Bouyea*,
  152 F.3d 192 (2nd Cir. 1998).................................................................... 10

*United States v. Broughton*,
  689 F.3d 1260 (11th Cir. 2012) ........................................................... 18, 19

*United States v. Griffin*,
  76 F.4th 724 (7th Cir. 2023) ..................................................................... 10

*United States v. Hoffecker,*
530 F.3d 137 (3d Cir. 2008) ........................................................ 17

*United States v. Jenkins,*
633 F.3d 788 (9th Cir. 2011) ...................................................... 17

*United States v. Khoury,*
2019 WL 6687715 (S.D. Tex. Dec. 6, 2019) ............................... 18

*United States v. Kozeny,*
541 F.3d 166 (2nd Cir. 2008) ..................................................... 16

*United States v. Lyttle,*
667 F.3d 220 (2d Cir. 2012) ........................................................ 19

*United States v. Marr,*
760 F.3d 733 (7th Cir. 2014) ...................................................... 10

*United States v. Martin,*
803 F.3d 581 (11th Cir. 2015) ...................................................... 9

*United States v. Mullins,*
613 F.3d 1273 (10th Cir. 2010) .................................................. 11

*United States v. Murillo,*
443 Fed. Appx. 472 (11th Cir. 2011) ............................................ 9

*United States v. Neill,*
940 F. Supp. 332 (D.D.C. 1996) ................................................. 18

*United States v. O'Brien,*
953 F.3d 449 (7th Cir. 2020) ...................................................... 10

*United States v. Pelullo,*
964 F.2d 193 (3d Cir. 1992) ................................................. 10, 11

*United States v. Ramirez,*
324 F.3d 1225 (11th Cir. 2003) .................................................... 2

*United States v. Rojas,*
824 Fed. Appx. 600 (11th Cir. 2020) ............................................ 9

*United States v. Serpico,*
320 F.3d 691 (7th Cir. 2003) ...................................................... 10

*United States v. Stargell,*
738 F.3d 1018 (9th Cir. 2013) .................................................... 11

*United States v. Stargell,*
   739 F.3d 1018 (9th Cir. 2013) ................................................................... 9

*United States v. Torkington,*
   812 F.2d 1347 (11th Cir. 1987) ................................................................. 2

*United States v. Torres*,
   318 F.3d 1058 (11th Cir. 2003) ............................................................. 6, 17

*United States v. Ubakanma,*
   215 F.3d 421 (4th Cir. 2000) ................................................................... 11

*United States v. Winslow,*
   No. 23-12230, 2024 WL 3595909 (11th Cir. July 31, 2024)................................. 19

**Statutes:**

12 U.S.C. § 1833a(c)(1) ........................................................................ 14

18 U.S.C. § 2 ....................................................................................1

18 U.S.C. § 666(a)(1)(A) ........................................................................12

18 U.S.C. § 1007 ................................................................................13

18 U.S.C. § 1014 ................................................................................13

18 U.S.C. § 1343 ......................................................................... 1, 9, 10, 12

18 U.S.C. § 1349 ................................................................................ 1

18 U.S.C. § 3282(a) ............................................................................. 4

18 U.S.C. § 3292 ......................................................................... 1, 3, 4, 6, 15

18 U.S.C. § 3292(a)(1) .......................................................................... 16

18 U.S.C. § 3292(b) ........................................................................... 5, 16

18 U.S.C. § 3292(c)(1) .......................................................................... 6

18 U.S.C. § 3293 ............................................................................... 12

18 U.S.C. § 3293(1) ......................................................................... 13, 14

18 U.S.C. § 3293(2) ........................................................................ 3, 7, 8, 9, 10, 12, 15

**Rule:**

Fed.R. Crim. P. 12(b) ................................................................................................ 2

**Other Authorities:**

*Black's Law Dictionary* (12 ed. 2024) ...........................................................................8

Merriam-Webster's Dictionary Online, *available at* https://www.merriam-webster.com
/dictionary/affect (last accessed December 13, 2024) ................................................ 8

The United States of America, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, and Glenn S. Leon, Chief of the Fraud Section, Criminal Division, U.S. Department of Justice, files this response in opposition to the defendants' second motion to dismiss the Indictment. [Doc. No. 133.]   The defendants' motion should be denied because all counts of the Indictment were returned within the applicable statute of limitations, either based on the statute or pursuant to a suspension of the statute of limitations under 18 U.S.C. § 3292.

## I.    BACKGROUND

On March 30, 2023, a federal grand jury in the Southern District of Alabama returned an Indictment against defendants Craig D. Perciavalle, Joseph A. Runkel, and William O. Adams (hereinafter "Perciavalle," "Runkel," and "Adams" or, collectively, "the defendants"), charging them with one count of conspiracy to commit wire fraud and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1349, five counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 2, and two counts of wire fraud affecting a financial institution, in violation of 18 U.S.C. §§ 1343, 2.   [Doc. No. 1.]

The Indictment alleges that, from in or around 2013 through in or around 2016, while serving as executives at Austal USA, a contractor for the United States Navy, the defendants agreed and schemed to make and cause others to make false and misleading statements about Austal USA's financial performance on one of its Navy shipbuilding programs (the littoral combat ship or LCS program), and about Austal USA's overall financial condition, in order to defraud Austal Limited's shareholders and the investing public.   [*Id.* at ¶ 12.]   The defendants did this by intentionally providing false and fraudulent financial information to Austal USA's Board of Directors, Austal USA's independent financial statement auditors, and Austal Limited for dissemination to Austal Limited's shareholders and the investing public.   [*Id.* at ¶ 13.]   The

defendants engaged in the scheme to defraud to mislead Austal Limited's shareholders and the investing public about Austal USA's financial condition in order to maintain and increase the share price of Austal Limited's stock (through the purchase of shares by shareholders and the investing public at artificially inflated prices) and unjustly enrich the defendants and others through the continued receipt of compensation, stock, and other benefits.   [*Id.* at ¶ 14.]

The purpose of the above-described scheme was to defraud shareholders and the investing public, and it also affected financial institutions, including Bank 1 and Bank 2.   [*Id.* at ¶ 34.] During the scheme to defraud, the defendants caused Bank 1 and Bank 2 to receive false financial statements for fiscal years 2014 and 2015 prior to the banks entering into a syndicated facility agreement for approximately $105 million to finance construction at Austal USA's shipyard in Mobile, Alabama, among other purposes.   [*Id.* at ¶¶ 34, 36-37.]

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) governs motions to dismiss an indictment.   The Eleventh Circuit has held that "when a statute of limitations defense is clear on the face of the indictment and requires no further development of facts at trial," a defendant must raise it in a pretrial motion to dismiss.   *United States v. Ramirez*, 324 F.3d 1225, 1228–29 (11th Cir. 2003). While an indictment may be dismissed where there is an infirmity of law in the prosecution, a court may not dismiss an indictment on a "determination of facts that should have been developed at trial."   *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

## III.    DISCUSSION

The defendants argue that the Indictment must be dismissed based on the statute of limitations for two reasons: (1) Counts 1, 7, and 8 are not subject to a 10-year statute of limitations despite the fact that they charge wire fraud affecting a financial institution, a violation that expressly provides for a 10-year statute of limitations; and (2) ███████████████████

███████████████████████████████████████████████

████████████.  [Doc. No. 133.]  The defendants' arguments ignore the plain language of the statutes, and, at times, disregard binding Eleventh Circuit precedent.  Thus, the defendants' arguments are without merit, and their motion should be denied.

The defendants' first argument fails because their interpretation of 18 U.S.C. § 3293(2) is contrary to the plain language of the statute, the statutory context, the statute's legislative history, Eleventh Circuit precedent, and decisions of circuit courts across the country.

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

## A.  The Indictment is Timely

As an initial matter, all counts of the Indictment were brought within the proper statute of limitations, and the defendants' arguments to the contrary are without merit, as discussed further below.

Counts 1, 7, and 8 of the Indictment charge the defendants with wire fraud affecting a financial institution under 18 U.S.C. § 1343 and are subject to a 10-year statute of limitations.  18 U.S.C. § 3293(2) ("No person shall be prosecuted, tried, or punished for a violation of, or a conspiracy to violate . . . section 1341 or 1343, if the offense affects a financial institution . . . unless the indictment is returned or the information is filed within 10 years after the commission of the offense.").  All three counts were properly brought within 10 years from the date of the offense:

| Count | Approximate Date | Description of Count | Statute of Limitations |
|-------|------------------|----------------------|------------------------|
| 1 | 2013 through at least in or around August 2016 | 18 U.S.C. § 1349 Conspiracy to Commit Wire Fraud and Wire Fraud Affecting a Financial Institution | August 2026 |
| 7 | July 29, 2014 | 18 U.S.C. § 1343 Wire Fraud Affecting a Financial Institution | July 29, 2024 |
| 8 | August 18, 2014 | 18 U.S.C. § 1343 Wire Fraud Affecting a Financial Institution | August 18, 2024 |

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████  ████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

4







**B.    The Defendants Misconstrue 18 U.S.C. § 3293(2) —Counts 1, 7, and 8 Have a 10-Year Statute of Limitations**

The defendants' first argument seeks to dismiss Counts 1, 7, and 8 even though the counts have a 10-year statute of limitations. The defendants' proposed interpretation of 18 U.S.C. § 3293(2) is contrary to the plain language of the statute, the statutory context, the statute's legislative history, Eleventh Circuit precedent, and decisions of circuit courts across the country over the past twenty-plus years—including after the Supreme Court decided *Kelly*. Section 3293(2) provides that "[n]o person shall be prosecuted, tried, or punished for a violation of, or a conspiracy to violate…section 1341 or 1343, if the offense affects a financial institution . . . unless the indictment is returned or the information is filed within 10 years after the commission of the offense." The defendants wish that "affects" means—and could only mean—"defrauds," such that § 3293(2) could apply only when a financial institution's money was "the object of the fraud." [Doc No. 133 at 8.] After proposing a faulty interpretation of the plain language in the statute,

7

the defendants then further argue that *Kelly*—a Supreme Court opinion that has nothing to do with § 3293(2) or the allegations in this case—cabins § 3293(2) such that Counts 1, 7, and 8 fail to allege offenses that trigger the 10-year statute of limitations.

As explained below, the defendants' arguments fail because § 3293(2) does not require the government to allege that a financial institution was defrauded to allege wire fraud affecting a financial institution.

### 1. The plain language of § 3293(2) clearly *does not* require that a financial institution was defrauded.

The defendants' entire argument centers on their cramped interpretation of the meaning of the words "if the offense affects a financial institution" in 18 U.S.C. § 3293(2). The defendants argue that an offense only "affects" a financial institution if it *defrauds* a financial institution.

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The "inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal cites and quotes omitted). Here, the words "if the offense affects a financial institution" are plain and unambiguous.

Section 3293 does not define the phrase "affects a financial institution," so the Court must "interpret those words in accordance with their plain and ordinary meaning." *Spencer v. Specialty Foundry Products Inc.*, 953 F.3d 735, 740 (11th Cir. 2020) (internal quotes and cites omitted). "To determine the ordinary meaning of an undefined statutory term, 'we often look to dictionary definitions for guidance.'" *Id.* (quoting *In re: Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018)). *Black's Law Dictionary* defines the verb "affect" as "Most generally, to produce an effect on; to influence in some way." 12th Ed. 2024. Merriam-Webster's Dictionary defines the

verb "affect" as "to produce an effect upon (someone or something)" or "to influence (someone or something)."[1]

The "plain and ordinary meaning" of the phrase "affects a financial institution" does not support the defendants' position that it applies only when a bank is defrauded. It means that the wire fraud offense must "produce an effect on" or "influence" a financial institution.[2]

Eleventh Circuit case law further supports that the phrase "affects a financial institution" does not mean that the financial institution must be the intended victim of the fraud scheme. In *United States v. Martin*, the court held that a financial institution is sufficiently "affected" by a scheme to defraud—for purposes of proving the elements of wire fraud affecting a financial institution—when the scheme resulted "in an increased risk of loss," regardless of whether the institution suffered any loss. 803 F.3d 581, 590 (11th Cir. 2015) (citing *United States v. Stargell*, 739 F.3d 1018, 1022 (9th Cir. 2013)). While the *Martin* panel interpreted the phrase "affects a financial institution" in the context of the increased statutory maximum sentence under 18 U.S.C. § 1343, the same interpretation was later applied in an unreported decision holding that the government had presented sufficient evidence as to both the increased wire fraud penalties and the 10-year statute of limitations in § 3293(2). *See United States v. Rojas*, 824 Fed. Appx. 600, 604 (11th Cir. 2020) (scheme put a bank "at an increased risk of loss" merely because the bank provided funding to the defrauded party who ultimately paid it out). Similarly, the Eleventh Circuit found, in another unreported decision, that § 3293(2) applied where the defendant was

---

[1] *See* Merriam-Webster's Dictionary Online, *available at* https://www.merriam-webster.com/dictionary/affect (last accessed December 13, 2024).

[2] The mere use of a broad term (like the verb "affect") does not make a statute ambiguous. *See Penn. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("As we have said before, the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.").

charged with wire fraud affecting a financial institution and evidence at trial showed that the defendant's mortgage loan was sold to a subsidiary of a financial institution and that late payments to the subsidiary would affect the parent financial institution. *United States v. Murillo*, 443 Fed. Appx. 472 (11th Cir. 2011). The defendants' theory that § 3293(2) applies only when a financial institution is the object of the fraud is not supported by Eleventh Circuit case law. All that § 3293(2) requires is that a financial institution suffered an increased risk of loss. The Indictment adequately sets forth allegations that Bank 1 and Bank 2 suffered an increased risk of loss as a result of the defendants' alleged wire fraud scheme. [Doc. No. 1 at ¶¶ 34-38, 50-55.]

These Eleventh Circuit decisions are consistent with how other circuits have applied the "affects a financial institution" language of §§ 3293(2) and 1343, including after the Supreme Court's decision in *Kelly*. For example, in *United States v. Griffin*, the Seventh Circuit held that the government did not constructively amend the indictment at trial in proving that the defendants' wire fraud scheme defrauded the Small Business Administration (SBA). 76 F.4th 724, 736 (7th Cir. 2023). Specifically, the Seventh Circuit held:

> Conspiracy to commit wire fraud affecting a financial institution in violation of 18 U.S.C. § 1349 can consist of defrauding the SBA; the Government does not have to prove, as the defendants suggest, that the object of the conspiracy was to defraud a financial institution. . . . The statute of limitations for wire fraud is generally five years, but, if the wire fraud 'affects a financial institution,' a ten-year statute of limitations applies. 18 U.S.C. § 3293(2). We have explained that in a wire fraud case the 'object of the fraud is not an element of the offense.' *United States v. Marr*, 760 F.3d 733, 743–44 (7th Cir. 2014) (quoting *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992)). Therefore, to convict someone of wire fraud affecting a financial institution, 'the wire fraud statute only requires the government to prove that a defendant intended for his or her scheme to defraud *someone*[;] a financial institution does not need to be the intended victim.' *Id.* at 744; *see also United States v. O'Brien*, 953 F.3d 449, 456 (7th Cir. 2020) (discussing mail fraud affecting a financial institution). For wire fraud to affect a financial institution, it simply must expose the financial institution to a 'new or increased risk of loss.' *United States v. Serpico*, 320 F.3d 691, 694–95 (7th Cir. 2003).

*Id.* at 736–37.

Other circuits have similarly held that the "affects a financial institution" language does not require that the financial institution be the intended victim or the object of the fraud. *See United States v. Bouyea*, 152 F.3d 192, 195 (2nd Cir. 1998) ("Congress chose to extend the statute of limitations to a broader class of crimes [than ones where] the financial institution is the object of the fraud."); *United States v. Pelullo*, 964 F.2d 193, 216-17 (3rd Cir. 1992) ("Pelullo's argument would have more force if the statute provided for an extended statute of limitations where the financial institution is the *object* of fraud. Clearly, however, Congress chose to extend the statute of limitations to a broader class of crimes."); *United States v. Stargell*, 738 F.3d 1018 (9th Cir. 2013) ("Regarding the definition of 'affects' in 18 U.S.C. § 1343, we join our sister circuits in defining such term to include new or increased risk of loss to financial institutions."); *United States v. Mullins*, 613 F.3d 1273, 1278-79 (10th Cir. 2010) ("[A] 'new or increased risk of loss' is plainly a material, detrimental effect on a financial institution, and falls squarely within the proper scope of [18 U.S.C § 3293(2)]."); *c.f.*, *United States v. Agne*, 214 F.3d 47, 51 (1st Cir. 2000) (finding that "at a minimum there needs to be some impact on the financial institution to support a conviction," without holding that § 3293(2) requires proof that a financial institution was itself the object of the fraud); *United States v. Ubakanma*, 215 F.3d 421, 426 (4th Cir. 2000) (finding that "the institution itself [must have been] victimized by the fraud, as opposed to the scheme's mere utilization of the financial institution in the transfer of funds," and noting that the government had "conceded that the absence of facts showing that the fraud scheme in some way *victimized or affected* a financial institution" (emphasis added) in concluding that the provision did not apply).

The defendants' motion suggests that the Supreme Court's decision in *Kelly* somehow alters the analysis applied consistently by appellate courts before and after *Kelly*. The defendants, however, are mistaken—nothing in *Kelly* addresses the proper interpretation of § 3293(2) or the "affects a financial institution" language as it is used in any context. The defendants in *Kelly* were

11

not charged with wire fraud affecting a financial institution. They were charged with wire fraud in connection with their misuse of public resources to achieve political retribution against a local mayor who refused to endorse their boss, then-governor of New Jersey Chris Christie, in the so-called "Bridgegate" scandal. The *Kelly* decision stands for the proposition that a conviction for property fraud—whether under 18 U.S.C. § 1343 or § 666(a)(1)(A)—requires proof that loss of property by a victim is an object of the fraud, rather than "only an incidental byproduct of the scheme." *Kelly*, 590 U.S. at 402. The Supreme Court's *Kelly* opinion says nothing about when a fraud scheme "affects a financial institution" under § 3293(2). Therefore, *Kelly* plays no role in assessing the "plain and ordinary" meaning of that phrase and does not diminish the weight of authority interpreting that phrase in the Eleventh Circuit and its sister circuits.

> **2. The statutory scheme demonstrates that "affects a financial institution" means that the defendants' scheme exposed a financial institution to *an increased risk of loss*—not that it was the object of the fraud scheme.**

The defendants assert that the phrase "affects a financial institution" is "ambiguous" in an attempt to narrow its scope to offenses only where a financial institution is the object of the fraud scheme—i.e., where a bank was defrauded out of money or property. Not only does the plain language of the statute refute this narrow reading of § 3293(2) (as addressed above), the statutory scheme disproves the defendants' interpretation. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341. Here, the context of the statute does not support the new interpretation offered by the defendants.

The defendants argue that "§ 3293's title and statutory scheme focus on crimes of fraud *against* financial institutions." [Doc. 133 at 11.] Yet this is demonstrably not the case.

The full text of 18 U.S.C. § 3293 is as follows:

> No person shall be prosecuted, tried, or punished for a violation of, or a conspiracy to violate—
>
> **(1)** section 215, 656, 657, 1005, 1006, 1007, 1014, 1033, or 1344;
>
> **(2)** section 1341 or 1343, if the offense affects a financial institution; or
>
> **(3)** section 1963, to the extent that the racketeering activity involves a violation of section 1344;
>
> unless the indictment is returned or the information is filed within 10 years after the commission of the offense.

The defendants claim that the title of this code section, "Financial Institution Offenses," "most naturally suggests § 3293 extends only to criminal offenses *against* financial institutions," [Doc. 133 at 11.], but provide no textual support for this reading.[3] In fact, there is nothing in the three words "Financial Institution Offenses" that suggests a limitation to violations that directly target financial institutions rather than those that involve financial institutions in other ways.

Moreover, the statutory context refutes the defendants' narrow interpretation of the title and the statutory scheme. For example, part (1) of § 3293 lists several Title 18 violations for which a 10-year statute of limitations will apply *without any mention of whether a financial institution is affected*. Some of the enumerated offenses in § 3293(1) clearly do not require that any financial institution be the object or intended victim of the violation. For example, 18 U.S.C. §§ 1007 and 1014 prohibit the making of a false statement with the purpose of influencing regulators like the FDIC or the Federal Housing Administration. Section 1005 prohibits false entries in the financial books and records of a financial institution with the intent to defraud any individual or company—which may or may not include the financial institution itself. When one district judge reviewed a similar list of statutes in considering a similar argument about the scope

---

[3] "The title of a statute cannot limit the plain meaning of the text. For interpretive purposes, it is of use only when it sheds light on some ambiguous word or phrase." *Yeskey*, 524 U.S. at 212 (internal quotations and citations omitted).

of FIRREA—the act that brought about § 3293 along with other U.S. Code changes addressing malfeasance impacting financial institutions—and its civil penalty provisions (i.e., whether they applied only when a financial institution was the victim), the judge observed that the inclusion of the enumerated violations in 12 U.S.C. § 1833a(c)(1)[4] suggested that:

> Congress, in passing [FIRREA's civil penalty provisions], was not necessarily concerned only with harm to financial institutions—let alone only their victimization—as it was with the presence of criminal activity in matters meaningfully involving financial institutions, however that activity may affect them.

*United States v. Bank of New York Mellon*, 941 F. Supp. 2d 438, 453 (S.D.N.Y. 2013).

The same conclusion applies to 18 U.S.C. § 3293. The Title 18 offenses listed in part (1) of § 3293 clearly *involve* financial institutions by their own terms, and so there is no added limitation that offenses under those statutes must also "affect" a financial institution for the 10-year statute of limitations to apply. The mail and wire fraud statutes, however, are not limited by their terms to crimes involving financial institutions, so § 3293 applies to a mail or wire fraud violation only when it "affects a financial institution," thereby bringing those offenses in alignment with the other offenses in § 3293 that clearly involve—but do not necessarily require the victimization of—financial institutions. Therefore, contrary to the defendant's arguments about the meaning of the title "Financial Institution Offenses," the statutory context demonstrates that it is not limited to violations where the intended victim was a financial institution.

### 3. The legislative history of Section 3293(2) also supports the long-held view across federal circuits that Congress did not intend to limit the statute to situations where a financial institution was defrauded.

The Court need not resort to an analysis of the legislative history here because the text and statutory structure of Section 3293 are unambiguous and do not support the defendants'

---

[4] Title 12 U.S.C. § 1833a(c)(1) lists eight of the nine offenses listed in 18 U.S.C. § 3293(1).

interpretation of the statute. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) ("Since our interpretation of § 300aa-22(b)(1) is the only interpretation supported by the text and structure of the NCVIA, even those of us who believe legislative history is a legitimate tool of statutory interpretation have no need to resort to it."). That said, the legislative history of § 3293 also shows that the defendants misinterpret the statute—"affects a financial institution" does not mean "defrauds a financial institution."

District Judge Kaplan's analysis in *United States v. Bank of New York Mellon* is illustrative. As Judge Kaplan noted in his analysis, the legislative history of the "purposes" language in the text of FIRREA disproved the notion that FIRREA was focused only on matters where a financial institution was victimized. *Bank of New York Mellon*, 941 F. Supp. 2d 455 at 456 (citing 103 Stat. 187, Section 101, "Purposes"). Section 101 of FIRREA provides that one of the purposes of the act was to "strengthen the civil sanctions and criminal penalties for *defrauding or otherwise damaging* depository institutions and their depositors." 103 Stat. 187 (emphasis added). As Judge Kaplan correctly pointed out, "this purpose cannot support viewing 'affecting' [for purposes of applying FIRREA's penalty provision] as 'victimizing,' since it suggests that 'otherwise damaging' the institution is sufficient even if the institution is not the direct object of the crime." *Bank of New York Mellon*, 941 F. Supp. 2d at 456, n. 105.

Thus, contrary to the defendants' arguments, Counts 1, 7, and 8 properly charge wire fraud affecting a financial institution and thus have a 10-year statute of limitations under 18 U.S.C. § 3293(2).

**C.** ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████











## IV.    CONCLUSION

For all the reasons stated herein, this Court should deny the defendants' motion to dismiss the Indictment.

Respectfully submitted this 16th day of December 2024.


SEAN P. COSTELLO                          GLENN S. LEON
UNITED STATES ATTORNEY                    CHIEF, FRAUD SECTION


By: /s/ *Christopher J. Bodnar*          By: /s/ *Laura Connelly*
Christopher J. Bodnar                      Kyle C. Hankey, Assistant Chief
Assistant United States Attorney           Laura Connelly, Acting Assistant Chief
United States Attorney's Office for the    Robert Spencer Ryan, Trial Attorney
Southern District of Alabama               Criminal Division, Fraud Section
60 South Royal Street, Suite 600           1400 New York Avenue NW
Mobile, Alabama 36602                      Washington, D.C. 20005
                                           Telephone: (202) 514-2000
                                           Facsimile: (202) 514-0142

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2024, I electronically filed the foregoing motion to file under seal with the Clerk of the Court using the Court's CM/ECF system.

<u>/s/ *Laura Connelly*</u>