IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>CRAIG D. PERCIAVALLE,<br>JOSEPH A. RUNKEL, and<br>WILLIAM O. ADAMS,<br><br>              Defendants. | Criminal Action No. 1:23-CR-00070-JB-N |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION FOR
*IN CAMERA* REVIEW AND DISCLOSURE OF GRAND JURY MATERIALS**

Defendants Craig Perciavalle, Joseph Runkel, and William Adams, through their undersigned counsel, hereby file this reply in support of their joint motion for *in camera* review and disclosure of any instructions, legal guidance, or closing comments provided by the government to the grand jury in this matter (Doc. 185). In their motion, the defendants demonstrated a particularized need for disclosure of the government's instructions or other legal guidance to the grand jury as authorized by Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). In response, the government advances two arguments against disclosure: first, that the defendants' motion for *in camera* review and disclosure of the grand jury instructions is duplicative of their first motion to dismiss the indictment (Doc. 129) and will be rendered moot by any decision of this Court on the motion to dismiss and, second, that the defendants have presented only speculation in support of their request for disclosure of the grand jury instructions and therefore have not demonstrated the required "particularized need." *See* Doc. 188 (Gov't Resp. to Defs' Mot. for Disclosure), PageID.922–931. Neither argument avails.

An indictment must be dismissed when there is "grave doubt that the decision to indict was free from the substantial influence" of error in the grand jury. *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 256 (1988). This basis for dismissal, on which the defendants' motion for disclosure of the grand jury instructions is premised, is distinct and separate from dismissal of an indictment for failure to state an offense. The defendants agree that if the Court grants either of their motions to dismiss (Doc. 129, Doc. 133) and dismisses the indictment before deciding the present motion, then their request for disclosure of the grand jury materials would be moot. But should a review of the grand jury instructions confirm that the grand jury was fundamentally misled as to the requirements of the wire fraud statute, then there would be no question that the error substantially influenced the grand jury's decision to indict, and dismissal of the indictment would be separately warranted on that ground.

Defendants have more than demonstrated a particularized need for the limited disclosure they seek. The government has never—including in its opposition to the instant motion—articulated a wire fraud theory premised on the defendants scheming to obtain shareholders' money or property for themselves *or* for any other party, nor does the indictment allege such a scheme. To the contrary, the government has been clear that it is relying on a "fraudulent inducement" theory whereby the defendants allegedly "trick[ed] investors into parting with their money or property to purchase shares of Austal Limited at artificially inflated prices." Doc. 188, PageID.925. This theory of liability (which itself goes beyond the language of the indictment) posits a scheme to *deprive* shareholders of money but includes no allegation whatsoever that the defendants schemed to *obtain* that money. The defendants' motion for disclosure of the grand jury instructions, therefore, is not based on "speculation"; it is based, very specifically, on the many statements by the government to this Court demonstrating that the government does not now and

never has had a theory of wire fraud liability that conforms to the language of the wire fraud statute or to the statutory elements articulated by the Supreme Court in *Kousisis v. United States*, 605 U.S. 114 (2025). If the grand jury's decision to indict was substantially influenced by a similarly flawed understanding of what the wire fraud statute requires, then the indictment must be dismissed. The defendants, for this reason, have a particularized need for disclosure of the legal instructions and guidance provided to the grand jury.

A. **Whether the grand jury was misled as to the requirements of the wire fraud statute when it decided to indict the defendants is distinct from whether the indictment is facially sufficient.**

The government's contention that the defendants' arguments for disclosure of the grand jury instructions are "actually arguments about the indictment being 'facially invalid'" is wrong. Doc. 188, PageID.923. While the indictment *is* invalid on its face for the reasons set forth in the defendants' first motion to dismiss and related filings (Doc. 129, 132, 169), disclosure of the grand jury instructions is warranted under Rule 6(e)(3)(E)(ii) because errors or omissions in the government's explanation of wire fraud to the grand jury would form a basis for dismissal *independent of* the indictment's facial invalidity. Specifically, if the grand jury were apprised that it could indict the defendants based on a finding of probable cause that the defendants schemed either to mislead shareholders in order to affect the price of Austal Limited stock or to mislead shareholders into parting with their money, *even in the absence of probable cause that the defendants schemed to obtain shareholders' money*, then the indictment is due to be dismissed regardless of its facial sufficiency. This is so because (a) such an instruction would be an erroneous statement of the requirements of the wire fraud statute, and (b) there would plainly be "grave doubt" that the grand jury's decision to indict was "free from the substantial influence" of such a fundamental error. *Bank of Nova Scotia*, 487 U.S. at 256.

The government's argument that "where an indictment is found to be facially valid, defendants cannot show a particularized need for the legal instruction to the grand jury" (Doc. 188, PageID.923–924) is contradicted by the text of Rule 6, the Supreme Court's decision in *Bank of Nova Scotia*, and the cases cited by the government itself. *First*, Rule 6(e)(3)(E)(ii) authorizes disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." This exception would be meaningless if a facially valid indictment could never be dismissed on the basis of misconduct or errors in the government's presentation to the grand jury. *Second*, the Supreme Court has acknowledged that an indictment should be dismissed where there is a "grave doubt" that the grand jury's decision to indict was "free from the substantial influence" of an error before the grand jury. *Bank of Nova Scotia*, 487 U.S. at 256. This standard for demonstrating prejudice to the defendant sufficient to warrant dismissal in no way depends on the facial validity of the indictment. Indeed, if the facial validity of the indictment were determinative, there would be no need for the Supreme Court to articulate any standard for whether an error before the grand jury prejudiced the defendant sufficiently to warrant dismissal, because an indictment that fails to state an offense is *ipso facto* prejudicial and due to be dismissed. *Third*, none of the cases cited by the government holds that a facially valid indictment is a bar to a defendant's showing of particularized need for the legal instructions given to the grand jury. Doc. 188, PageID.924. To the contrary, in each case the court examined the basis proffered by the defendant and found it insufficient to establish "particularized need." *See U.S. v. Apodaca*, 287 F. Supp. 3d 21, 49–50 (D.D.C. 2017) (examining extradition request cited by defendant in support of particularized need); *U.S. v. Espy*, 23 F. Supp. 2d 1, 10 (D.D.C. 1998) (finding that alleged failure to instruct the grand jury as to facts that were "not essential elements" of the charged offense did not warrant disclosure of the grand jury minutes);

*U.S. v. Chalker*, No. 12-cr-0367, 2013 WL 4547754, at \*5–6 (E.D. Pa. Aug. 27, 2013) (examining and rejecting defendant's arguments that the government's *theory* of wire fraud was invalid before additionally mentioning the facial validity of the indictment); *U.S. v. Gurry*, No. 16-cr-10343, 2019 WL 247205, at \*3 (D. Mass. Jan. 17, 2019) (defendants offered only incorrect legal arguments for the insufficiency of the indictment in support of their request for disclosure).[1]

The defendants' motion here relies not just on the facial insufficiency of the indictment but on repeated instances of the government asserting a legally invalid wire fraud theory. Though now purporting to agree with the defendants that "to be convicted of wire fraud, *defendants must have schemed to obtain money or property from the victim of the scheme*," Doc. 188, at PageID.926 (emphasis added), the government continues to maintain that its theory of prosecution in this case, and that alleged in the indictment, is a "fraudulent inducement theory of wire fraud" whereby "defendants schemed to defraud Austal Limited investors and the investing public of 'money or property' by tricking investors into *parting with* their money or property," *id.* at PageID.925 (emphasis added). As the Supreme Court spelled out in *Kousisis*, tracking the language of the wire fraud statute, the fraudulent inducement theory of wire fraud requires the following: "a defendant (1) 'devise[s]' a 'scheme' (2) to induce the victim into a contract to *'obtai[n]' her 'money or property'* (3) 'by means of false or fraudulent pretenses.'" 605 U.S. at 123 (quoting 18 U.S.C. § 1343) (emphasis added). "Obtain" is not an esoteric verb, and even if it were, the Supreme Court has helpfully defined it specifically for purposes of the wire fraud statute: "To 'obtain' something means 'to gain or attain possession' of it, usually 'by some planned action or method.'" *Id.*

---

[1] The government also cites *Costello v. United States*, 350 U.S. 359, 363 (1956), whose holding that a facially valid indictment is not "open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury" is inapposite here, where defendants are questioning the accuracy of the legal instructions and guidance provided by the government.

5

(quoting Webster's Third New International Dictionary 1559 (2002)).  Despite the government's protestations that it has alleged a *Kousisis*-compliant fraudulent inducement scheme (Doc. 188, PageID.925), it still has not identified who was supposed to "gain or attain possession" of the victim-shareholders' money under that purported scheme.

The government's assertion that "[w]here the parties differ is in whether defendants must have sought to obtain the money or property of the shareholders for themselves" is incorrect and a red herring.  Defendants have never maintained that a wire fraud violation cannot be premised on a defendant scheming "to obtain money for the benefit of a favored third party." *United States v. Porat*, 76 F.4th 213, 221 (3d Cir. 2023).  *See* Doc. 132 (Defs' Reply in Support of Mot. to Dismiss), PageID.591–592 (citing *Porat* and pointing out that "[h]ere, the government's position is that shareholder money or property was the object of the alleged scheme, but there is no allegation that the defendants schemed to obtain that shareholder property *either* for themselves *or* for any other identified party").  The problem with the government's fraudulent inducement theory is that it does not involve the defendants scheming to obtain money for *anybody* – themselves, a "favored third party," "a person of the defendant's choosing" (as posited in *United States v. Gatto*, 986 F.3d 104, 125 (2d Cir. 2021)), or *any other identified party*.

Instead, the government appears to suggest (without expressly saying so) that any scheme to cause a person to "part with" their money must necessarily be a scheme "to obtain" that money.  The language of the statute, as unambiguously construed in *Kousisis*, does not permit that interpretation.  Wire fraud requires a scheme "to obtain money or property."  A scheme only to cause somebody to lose money or property does not suffice.  Indeed, one can easily imagine a number of deceptive schemes in which the object is to cause a loss of money or property for some purpose other than obtaining that money or property; the two concepts are simply not

interchangeable. Here, even if the government's theory necessarily involves investors buying shares on the secondary market, the government has never alleged (and cannot allege) how or for whom the defendants sought *to obtain* those investors' money.[2]

The defendants have a particularized need for the legal instructions provided to the grand jury precisely because the government's articulation of its *theory*, which goes beyond and expands on the language of the indictment, is legally inadequate. That is a separate question from whether the indictment is insufficient on its face. The government's on-the-record statements make clear that the theory they are proceeding on, and therefore the theory presumably presented to the grand jury, is not viable because it fails to allege that the defendants schemed to obtain money or property from a victim. *In camera* review and disclosure of the grand jury instructions is needed to ascertain whether the grand jury indicted the defendants on that legally insufficient theory.

**B. The defendants have demonstrated a non-speculative basis in support of their particularized need for the grand jury materials.**

Far from merely "speculating" about what instructions were provided to the grand jury as to the requirements of the wire fraud statute, the defendants have presented multiple specific statements by the government, including in its response to the present motion (*see supra*), that demonstrate an almost certain likelihood that the grand jury did not find probable cause that the defendants schemed to obtain money or property from shareholders for themselves or for any other specific person or entity. *See* Doc. 185 (Defs' Mot. for Disclosure of Grand Jury Instructions),

---

[2] There is a statute—15 U.S.C. § 78j(b)—that prohibits the use of "any manipulative device or contrivance" "in connection with the purchase or sale of any security," without the requirement of an object to obtain money or property. But the grand jury's indictment charges wire fraud, not Title 15 securities fraud, and wire fraud *does* require a scheme to obtain money or property.

7

PageID.902–908.[3]  The defendants have further pointed to two significant Supreme Court decisions—*Kousisis*, 605 U.S. 114 (2025) and *Ciminelli v. United States*, 598 U.S. 306 (2023)—that came down *after* the indictment issued in this case and clarified what theories of wire fraud are permissible under the statutory language.  *Ciminelli* clarified that a wire fraud scheme must have traditional "money or property" as its object, an element notably missing from the indictment here.  598 U.S. at 309.  *Kousisis* delineated the elements of a fraudulent inducement scheme (the very theory the government claims to be proceeding under in this case) and clarified that one element of such a scheme is "to induce the victim into a contract to 'obtai[n]' her 'money or property.'"  605 U.S. at 123.  The timing of these two decisions in juxtaposition with the government's articulations of its theory to this Court (which are insufficient under the statute as written and as interpreted by the Supreme Court) and the language of the indictment (which is itself insufficient and gives no reassurance that the grand jury was properly instructed) constitute ample non-speculative bases for the defendants' request for *in camera* review and disclosure.

Notably, in its response to the present motion the government neither represented that it had correctly instructed the grand jury as to the "obtain" element, nor did the government voluntarily submit its instructions for the Court's *in camera* review – which, if they were not erroneous, would have resolved this motion without disclosure of the instructions to the defense.

"[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that

---

[3] In their motion, the defendants cited to the transcript from the August 20, 2025 hearing held by the Court on the defendants' motions to dismiss, and indicated that the transcript was attached to the motion as "Exhibit A."  *See* Doc. 185, PageID.904, 906, 907.  However, the defendants inadvertently neglected to attach that Exhibit A to the motion when filing the motion through CM/ECF.  The complete hearing transcript cited as "Exhibit A" in defendants' motion (Doc. 185) is therefore attached to this reply.

the decision to indict was free from the substantial influence' of the erroneous instruction." *U.S. v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) (citing *U.S. v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) and *Bank of Nova Scotia*, 487 U.S. at 256). If the government's instructions misled the grand jury to believe that it could indict the defendants without finding that they schemed to obtain, i.e., to "gain or attain possession" of, investors' money or property for themselves or for some other specified person, then there is certainly grave doubt that the decision to indict was free from the substantial influence of the error, and the indictment is due to be dismissed on that distinct basis.

The defendants have demonstrated a particularized need for *in camera* review of the legal guidance provided to the grand jury by the government.[4] *In camera* review of those materials and disclosure to the defendants of any instructions or guidance that would support dismissal of the indictment is therefore warranted.

\* \* \*

For the foregoing reasons, and those set forth in the defendants' motion (Doc. 185), the defendants respectfully request that the Court order the government to provide the transcripts of any instructions, legal guidance, or closing comments provided to the grand jury for the Court's *in camera* review and that, should the Court find based on such review that disclosure to the defense is warranted under Rule 6(e)(3)(E)(ii), that the Court order such disclosure.

Respectfully submitted,

/s/ *Jack W. Selden*
Jack W. Selden

---

[4] The government "does not dispute that defendants have narrowly structured their request to cover only the legal instructions" and "agrees with defendants that the considerations justifying secrecy are less relevant given the material requested and the prior production of witness grand jury testimony." Doc. 188, PageID.922 n.1. The only disputed issue, therefore, is whether the defendants have met their burden to demonstrate a "compelling and particularized need for disclosure." *U.S. v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004) (citation omitted).

Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
(205) 521-8472
jselden@bradley.com

Gregory G. Marshall (admitted *pro hac vice*)
Erin K. Sullivan
Bradley Arant Boult Cummings LLP
1900 K Street NW, Suite 800
Washington, DC 20006
(202) 393-7150
gmarshall@bradley.com
esullivan@bradley.com

*Counsel for Craig D. Perciavalle*

/s/ *James R. Sturdivant (with permission)*
James R. Sturdivant
Robert R. Baugh
Alyse N. Windsor
Dentons Sirote PC
2311 Highland Avenue South
Birmingham, AL 35205
(205) 930-5100
jim.sturdivant@dentons.com
robert.baugh@dentons.com
alyse.windsor@dentons.com

*Counsel for Joseph A. Runkel*

/s/ *Frederick G. Helmsing, Jr. (with permission)*
Frederick G. Helmsing, Jr.
T. Hart Benton III
Avery B. Pardee (admitted *pro hac vice*)
Jones Walker LLP
11 North Water Street, Suite 1200
Mobile, AL 36602
(251) 432-1414
fhelmsing@joneswalker.com
hbenton@joneswalker.com
apardee@joneswalker.com

*Counsel for William O. Adams*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2026, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, thereby serving this filing on all attorneys of record in this case.

/s/ *Jack W. Selden*
Jack W. Selden

*Counsel for Craig D. Perciavalle*